# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

KELLY ELIZABETH SCHWERDT,

                    Plaintiff,

           v.                                    No. 5:14-CV-895
                                                     (DNH/CFH)

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**

Law Offices of Steven R. Dolson
Attorney for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202

Hon. Richard S. Hartunian
United States Attorney for the
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**OF COUNSEL:**

STEVEN R. DOLSON, ESQ.

KAREN T. CALLAHAN, ESQ.
Special Assistant U.S. Attorney

## REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff Kelly Elizabeth Schwerdt brings this action pursuant to 42 U.S.C. § 405(g)

and 1383(c)(3) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.

---

      [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Schwerdt moves for a finding of disability, and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 11, 13. For the following reasons, it is recommended that the Commissioner's decision be affirmed.


## I. Background

### A. Procedural History

On April 19, 2011, plaintiff protectively filed applications for disability insurance benefits and supplemental security income pursuant to the Social Security Act and 42 U.S.C. § 401 et seq., claiming an alleged onset date of March 15, 2010. T. 152-65.[2] Both applications were denied on July 11, 2011. Id. at 67-82. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Richard E. Guida on October 23, 2012. Id. at 83-84, 38-60 (transcript of the hearing). In a decision dated November 30, 2012, the ALJ held that plaintiff was not entitled to disability benefits. Id. at 18-37. Plaintiff's counsel filed a timely request for review with the Appeals Council, and on May 29, 2014, the request was denied, making the ALJ's findings the final decision of the Commissioner. Id. at 1-4. This action followed.


### B. Facts

#### 1. Plaintiff's Testimony[3]

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 10.

[3] This section is a recitation of plaintiff's testimony and does not amount to findings of facts by this Court. See T. 38-60.

Plaintiff testified that she graduated college in 2000 with a bachelor of arts in liberal arts, drawing, and philosophy. T. 49. At the time of the hearing on October 23, 2012, she was working part-time as a teacher's aide in a pre-school classroom, receiving a minimum wage salary. Id. at 42, 48. She had been working at that position since September 2012. Id. at 42. She had volunteered at the school from March 2012 through mid-June 2012. Id. at 46. From 1993 until October 2010, plaintiff was employed as a part-time pet groomer. Id. at 42-43. She left that job because she was "severely depressed" and was attending frequent appointments with her psychiatrist and counselor. Id. Plaintiff claims that she only ever worked part-time because she felt that was all she could handle in light of her mental health issues. Id. at 44. She also stated that she does not think she would be able to handle working full-time as a teacher's aide because it would impact her sleep schedule and lead to manic episodes and suicidal ideations. Id. at 52-53. She claims that she has left previous jobs because of their negative impact on her sleep schedule. Id. at 51.

Plaintiff testified that, over the years, she has suffered from depressive and manic episodes brought on by stressors. T. 44. During these episodes, she will cry excessively, stay in bed, and neglect her personal hygiene. Id. She also finds that she does not have the motivation to engage in social activities during her episodes. Id. The episodes are brought on by stressors such as changes at her place of employment and to her sleep schedule. Id. at 44-45. Plaintiff stated that, currently, she sleeps eight hours per night and two hours during the day when she comes home from work. Id. at 50. When she is manic, she sometimes takes drugs to stay awake and "drink[s] more." Id. She also stated that during these manic episodes, she feels "grandiose" and feels "like nothing can hurt [or]

touch [her]." Id. During a manic episode, repetitive sounds make plaintiff feel agitated and angry. Id. at 51. She also cannot concentrate or focus during these episodes. Id.

Plaintiff was hospitalized in June 2011 for two days after a suicide attempt. T. 45-46. She also claims that she attempted suicide in 2001. Id. at 53. She stated that she thinks about suicide about every two weeks. Id. at 52. Plaintiff is currently living with her parents and her sister. Id. at 47. During the time between leaving her position as a pet groomer and starting to volunteer at the school, she resided with her girlfriend . Id. Plaintiff reported that she does housework, cooks dinner, and drives. Id. She also stated that she hopes to keep her job as a teacher's aide through the whole school year and then take the summer off. Id. at 48. She does not see herself moving to a full-time position because "the sleep schedule for bipolar really requires a lot" and she will become manic if she does not get enough sleep. Id.

Plaintiff has been seeing her psychiatrist, Bill Hines, M.D., for a few years. T. 48-49. She stated that she sees him about every two to three months for a medication check and to discuss her mood. Id. at 49. She also stated that she sees her therapist every three weeks, but two to three years ago, she had been seeing her every week. Id. She sees her more often if she is feeling depressed or manic. Id. At the time of the hearing, plaintiff was taking Celexa for depression, and Abilify, a mood stabilizer. Id. at 53. The medications cause drowsiness and dry mouth. Id.

### 2. Medical Evidence

#### i. Hospital Visits

Plaintiff was admitted to St. Joseph's Hospital on February 17, 2009 after she discontinued her medications and began experiencing symptoms of depression. T. 294. A Physician Narrative Admission Assessment noted that plaintiff exhibited signs of depression but she had no psychotic symptoms and did not appear to be in a mixed state. Id. at 297. The Assessment also noted that plaintiff was neatly groomed and well-dressed, made good eye contact, was cooperative, and did not make any abnormal movements. Id. Further, there was "no objective evidence to suggest that she [was] experiencing perceptual disturbances[,]" her thought process was coherent, and she had no active suicidal ideation. Id. The Assessment noted further that plaintiff's symptoms appeared to indicate bipolar disorder, and that her medication regimen at the time was very complicated and "one wonders what the utility of that regime was." Id. Plaintiff stated that her job at Petco was the only thing getting her out of bed daily. Id. at 294. Plaintiff was discharged that same day. Id. at 292.

At an interim visit to plaintiff's apartment on February 19, 2009, Tess Walsh, a counselor, noted that plaintiff was "pleasant and cooperative," but her apartment was "disheveled" with multiple animal defications. T. 290. Plaintiff reported that she felt better after starting a new medication regimen. Id. She once again stated that she "loves her job," and that her job "is what gets her through." Id. It was also noted at this visit that plaintiff "displays insight." Id. Plaintiff's Global Assessment of Functioning ("GAF") score on February 19, 2009 was 48. Id.

Plaintiff visited the emergency department at Upstate University Hospital on June 20, 2010 after ingesting multiple substances. T. 303. She did not have any suicidal ideations

nor was she depressed; she stated that she wanted to "party a little longer." Id. At the end of her hospital stay, plaintiff stated that she felt better. Id. at 304. Her attending doctor stated that she was "very pleasant and cooperative." Id. Plaintiff was discharged after six hours of observation and warned about the dangers of substance abuse. Id.

### ii. Nicole DeFurio, LMSW

The first treatment note from DeFurio in the administrative record is dated November 12, 2010. T. 289. At this appointment, DeFurio stated that plaintiff was euthymic, had good affect, good eye contact, and good physical apperance. Id. However, DeFurio noted that plaintiff's insight and judgment were "a bit limited but better than usual." Id. One month later, on December 15, 2010, plaintiff reported to DeFurio that she was "feeling good" and "more stable." Id. at 288. DeFurio noted the same objective findings and that plaintiff had "good insight and judgment" at this appointment. Id. Approximately two weeks later, on December 28, 2010, plaintiff's insight and judgment had improved to "very good." Id. at 285.

On January 11, 2011, plaintiff told DeFurio that she wanted to obtain employment but expressed concern about her concentration and focus. T. 284. DeFurio's objective findings at this appointment showed that plaintiff was euthymic, had congruent affect, good eye contact, and good physical appearance, but "slightly limited" insight and judgment. Id. At a January 31, 2011 appointment, plaintiff's insight and judgment had improved again to "good," and she reported to DeFurio that she felt well enough to start looking for a job. Id. at 281. On February 14, 2011, DeFurio noted that plaintiff exhibited incongruent affect and

"a bit limited" insight and judgment. Id. at 280. However, all objective findings were normal[4] again on March 15, 2011. Id. at 279.

On March 29, 2011, plaintiff reported to DeFurio that "things were getting worse" and that she had been sleeping excessively and hearing voices. T. 276. DeFurio noted that plaintiff was distraught, tearful in affect, and anxious, but that her insight and judgment were "surprisingly appropriate." Id. at 276-77. On April 7, 2011, plaintiff reported that she was feeling better. Id. at 275. DeFurio noted, in regard to plaintiff's bipolar disorder, that plaintiff appeared to be "a pretty consistent three- to four- month cycler." Id. Objective findings were normal other than limited insight and judgment. Id. Plaintiff's insight and judgment were "improved" at her appointments on July 11, and July 25, 2011. Id. at 360-61. On September 26, 2011, plaintiff "was euthymic" but "[h]er affect was kind of flat." Id. at 355. Objective findings were normal at her appointment on October 10, 2011, except that plaintiff's insight and judgment were limited. Id. at 353. Her insight and judgment were improved at an appointment on October 24, 2011. Id. at 352.

In February 2012, DeFurio's objective findings were again normal, except that she noted that plaintiff's insight and judgment were limited. T. 349. Objective findings were normal on March 13, 2012, but on April 2, 2012 plaintiff was "very despondent" and "tearful," with limited insight and judgment. Id. at 345-46. Plaintiff reported to DeFurio that she was feeling well on April 20, 2012, but DeFurio noted that her insight and judgment were still limited. Id. at 344. On May 9, 2012, DeFurio noted that plaintiff was "elated" at progress in her life although her insight and judgment were still limited. Id. at 343. Plaintiff's insight and

---

[4] "Normal objective findings" include congruent affect, good eye contact, good physical appearance, and a euthymic mood. See, e.g., T. 281.

judgment continued to be slightly limited on May 29, 2012. Id. at 340. On June 19, 2012, DeFurio observed that plaintiff was manic and that her insight and judgment were limited. Id. at 339.

### iii. Bill Hines, M.D.

Dr. Hines examined plaintiff on January 15, 2011 and noted that she was doing "much better" on Celexa and Abilify, although she was reporting excessive sleeping. T. 283. At an August 8, 2011 appointment, plaintiff admitted that she attempted suicide following a break-up with her girlfriend but that she is "happy" she did not succeed. Id. at 358. Dr. Hines kept her on a Celexa and Abilify regimen. Id. On May 15, 2012, Dr. Hines noted that plaintiff appeared with "bright" eyes and "a bright beautiful smile" which were "a change from some of her past presentations." Id. at 341. He also noted that she was looking forward to her job as a teacher's aide and seemed to be "pulling out of her funk of recent months." Id. At this appointment, he gave her refill prescriptions for Celexa and Abilify. Id.

### iv. DeFurio's and Hines' Medical Source Statement

DeFurio completed a Medical Source Statement (MSS) on October 14, 2012. T. 334-36. The MSS is co-signed by Dr. Hines, DeFurio's supervising physician. Id. at 336. The MSS indicated that plaintiff suffered from multiple signs and symptoms of bipolar disorder including: decreased energy; thoughts of suicide/harming others; feelings of guilt or worthlessness; mood disturbance; difficulty thinking or concentrating; emotional withdrawal

-8-

or isolation (at times); impulsive and damaging behavior (when manic); hyperactivity; impairment in impulse control; manic syndrome; easy distractibility; sleep disturbance; and decreased need for sleep. <u>Id.</u> at 334. However, the MSS indicated that plaintiff retained the ability and aptitude, although limited, to do unskilled work. <u>Id.</u> at 335.

The only areas where plaintiff would be "seriously limited, but not precluded" in regard to unskilled work were: completing a normal workday or workweek without interruption from psychological symptoms, and dealing with normal work stress. <u>Id.</u> The MSS noted that these areas would be seriously limited when plaintiff is experiencing a major depressive or manic episode. <u>Id.</u> DeFurio also noted that plaintiff would be seriously limited in the areas of maintaining socially-appropriate behavior and adhering to basic standards of neatness and cleanliness when manic. <u>Id.</u> at 336. DeFurio also opined that plaintiff would be "off task" 10% of the time during an eight-hour workday if stable and 20% of the time when depressed or manic, and noted that her attendance and performance is directly dependent on her emotional state. <u>Id.</u> Further, the MSS stated that plaintiff would be absent from work approximately three days per month due to her impairment. <u>Id.</u>

### v. Christina Liepke, M.D.

Dr. Liepke, plaintiff's primary care physician, completed a series of questions on plaintiff's conditions on May 2, 2011. T. 257-65. On that form, Dr. Liepke indicated that she had been treating plaintiff for ten years. <u>Id.</u> at 257. Dr. Liepke noted that plaintiff had been diagnosed with bipolar disorder, depression, and premenstrual tension syndrome. <u>Id.</u> As of November 2010, Dr. Liepke noted that plaintiff was struggling with staying asleep, irritability, and anxiety. <u>Id.</u> Dr. Liepke indicated that plaintiff's symptoms included irritability,

fatigue, mood changes, and poor judgment.  Id. at 258.  However, Dr. Liepke noted that,

even though the duration of plaintiff's condition was lifelong, her prognosis was fair.  Id.  In

regard to plaintiff's ability to function in a work setting, Dr. Liepke noted that, as of

November 4, 2010, plaintiff struggled with maintaining relationships with her supervisors

and peers due to her irritability.  Id. at 262.  Dr. Liepke noted that plaintiff may be limited in

the work-related mental activities of "sustained concentration and persistence" and

"adaption," depending on her bipolar cycle.  Id. at 264-65.  Dr. Liepke noted under the

"adaption" category that plaintiff sometimes "has difficulty setting realistic goals [and]

responding to changes in [her] work setting."  Id. at 265.  Plaintiff exhibited poor

concentration and "fair" insight and judgment on November 4, 2010.  Id. at 262.  Plaintiff's

psychiatric care was turned over to a psychiatrist in November 2010.  Id.


### vi.  Dennis M. Noia, Ph.D.

Dr. Noia performed a consultative psychiatric examination of plaintiff on May 3, 2011.

T. 269-73.  He noted that plaintiff's demeanor and responsiveness to questions were both

cooperative.  Id. at 270.  Her manner of relating, social skills, and overall presentation were

adequate.  Id.  He also noted that plaintiff's appearance and personal hygiene was good.

Id. at 270-71.  Further, Dr. Noia noted that plaintiff's thought processes, mood, and affect

were all normal.  Id. at 271.  Plaintiff reported that she spends her days doing chores,

reading, socializing, watching television, and listening to the radio.  Id.  Dr. Noia opined that

her cognitive functioning was in the average range, and her insight and judgment were fair.

Id.  Dr. Noia offered the following MSS:

> Vocationally, the claimant appears to be capable of

understanding and following simple instructions and directions.
She appears to be capable of performing simple and some
complex tasks with supervision and independently.  She appears
to be capable of maintaining attention and concentration for
tasks.   She can regularly attend to a routine and maintain a
schedule.  She appears to be capable of learning new tasks.
She appears to be capable of making appropriate decisions.
She appears to be able to relate to and interact moderately well
with others.  She appears to be having some difficulty dealing
with stress.

Id. at 271-72.


### vii.  Thomas Harding, Ph.D.

Dr. Harding, a DSS examiner, completed a psychiatric review technique and mental residual functional capacity assessment of plaintiff on May 18, 2011.  T. 306-23.  Based on the treatment notes available to him at the time, Dr. Harding determined that plaintiff had only moderate functional limitations in: activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.  Id. at 316.  He further concluded that plaintiff was not significantly limited or only moderately limited in the following areas: understanding and memory; sustained concentration and persistence; social interaction; and adaptation.  Id. at 320-21.  Dr. Harding noted that plaintiff has difficulties with interpersonal relationships due to irritability.  Id. at 322.  He also noted that plaintiff has difficulty managing stress, setting realistic goals, and responding to changes in the work setting.  Id.  Despite these findings, Dr. Harding determined that plaintiff's attention, concentration, and memory is intact.  Id.  Her insight and judgment are fair.  Id. She is capable of personally caring for herself, cooking, cleaning, shopping, and doing laundry.  Id.  Ultimately, Dr. Harding concluded that "[s]he appears to be capable of skilled and unskilled tasks, [and] she has difficulty managing stress."  Id.  However, plaintiff "can

-11-

enter the economy work force performing unskilled and complex tasks independently in a low contact setting."  Id.

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "'more than a mere scintilla,'" meaning that in the record one can find "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); see Halloran, 362 F.3d at 31.

### B.  Determination of Disability

"Every individual who is under a disability. . . shall be entitled to a disability. . . benefit

. . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not

less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an

affliction that is so severe that it renders an individual unable to continue with his or her

previous work or any other employment that may be available to him or her based upon

age, education, and work experience.   Id. § 423(d)(2)(A).  Such an impairment must be

supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. §

423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical

facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain

or disability, and educational background, age, and work experience."  Ventura v. Barnhart,

No. 04 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v.

Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)) (additional citation omitted).

     The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520,

to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he [or she] is
> not, the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his [or her]
> physical or mental ability to do basic work activities.  If the
> claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the [Commissioner] will
> consider him [or her] disabled without considering vocational
> factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful

-13-

activity.  Assuming the claimant does not have a listed
impairment, the fourth inquiry is whether, despite the claimant's
severe impairment, he [or she] has the residual functional
capacity to perform his [or her] past work.  Finally, if the claimant
is unable to perform his [or her] past work, the [Commissioner]
then determines whether there is other work which the claimant
could perform.

Berry, 675 F.2d at 467.  The plaintiff bears the initial burden of proof to establish each of the

first four steps.  DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry,

675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the

Commissioner to prove that the plaintiff is still able to engage in gainful employment

somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).


### C. ALJ Guida's Findings

Plaintiff, represented by counsel, testified at the hearing held on October 23, 2012.

T. 38-60.  Using the five-step sequential evaluation, the ALJ found that plaintiff (1) had not

engaged in substantial gainful activity since March 15, 2010, the alleged onset date; (2) had

the following severe medically determinable impairments: bipolar disorder; (3) did not have

an impairment, alone or in combination, sufficient to meet the listed impairments in

Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained

the residual functional capacity [("RFC")] to perform a full range
of work at all exertional levels but with the following
nonexertional limitations: the claimant is capable of performing
only unskilled work that is limited to simple routine repetitive
tasks involving only simple work related decisions with few, if
any, workplace changes and only occasional interaction with
supervisors, coworkers and the public;

and, thus; (5) given her age, education, work experience, and RFC, was capable of

engaging in employment which exists in significant numbers in the national economy.  Id. at

21-33.  Therefore, the ALJ determined that plaintiff was not disabled.  Id. at 33.

### D.  Plaintiff's Contentions

Plaintiff contends that the ALJ erred by failing to properly assess her credibility.  Dkt.

No. 11 at 3-5.  Plaintiff further contends that the ALJ erred by failing to give controlling

weight to her treating physician.  Id. at 5-9.

### 1.  RFC

The ALJ determined that plaintiff retained the RFC:

> to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: the claimant is capable of
> performing only unskilled work that is limited to simple routine
> repetitive tasks involving only simple work related decisions with
> few, if any, workplace changes and only occasional interaction
> with supervisors, coworkers and the public.

T. 25.  In reaching this assessment, the ALJ discussed the notes and opinions of Drs. Bill

Hines, M.D.; Christina Liepke, M.D.; Dennis M. Noia, Ph.D.; and Thomas Harding, Ph.D., as

well as the notes and opinions of Nicole DeFurio, LMSW.  Id. at 25-31.

RFC describes what a claimant is capable of doing despite his or her impairments

considering all relevant evidence, which consists of physical limitations, symptoms, and

other limitations beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,150

(N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings

must specify the functions plaintiff is capable of performing; conclusory statements

regarding plaintiff's capacities are not sufficient."  Martone, 70 F. Supp. 2d at 150 (citations

omitted).  RFC is then used to determine whether the claimant can perform his or her past

relevant work in the national economy.  <u>New York v. Sullivan</u>, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  The Second Circuit has clarified that, in step five of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]."  <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009).

### i.  Plaintiff's Credibility

Plaintiff alleges that the ALJ did not properly assess her credibility according to applicable legal standards.  Dkt. No. 11 at 3-5.  Specifically, plaintiff alleges that the ALJ erred because the ALJ arrived at his RFC determination before assessing her credibility.  <u>Id.</u> Defendant alleges that the ALJ properly assessed plaintiff's credibility and properly considered all of her subjective complaints.  Dkt. No. 25 at 10-12.

"It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.  <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 399 (1971)) (additional citations omitted).  The ALJ's assessment regarding the claimant's subjective complaints is a two-step inquiry.  <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010).  First, the ALJ must determine "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  <u>Id.</u> (citing 20 C.F.R. § 404.1529(b)).  If the ALJ determines that the claimant does not suffer from such a medically-determinable impairment, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as

-16-

consistent with the objective medical evidence and other evidence' of record." Id. (quoting

20 C.F.R. § 404.1529(b)).  However, an ALJ cannot reject a claimant's statements about

the limiting effect of symptoms "solely because the available objective medical evidence

does not substantiate [those] statements."  20 C.F.R. § 404.1529(c)(2).  The evidence to be

considered by the ALJ includes "information about [the claimant's] prior work record, [the

claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's]

treating or nontreating source, and observations by [Social Security Administration]

employees and other persons."  Id. § 404.1529(c)(3).

        If a medically-determinable impairment is shown, the ALJ must evaluate the

intensity, persistence, and limiting effects of the individual's symptoms to determine the

extent to which the symptoms limit the individual's ability to do basic work activities.  SSR

96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  The ALJ must consider several factors

pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and,

> (vii) Other factors concerning [the claimant's functional
> limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In determining what amount of credibility, if any, to afford a claimant's subjective complaints, the ALJ must consider all of the objective medical and additional evidence with the claimant's subjective complaints to determine whether there are any inconsistencies or conflicts. 20 C.F.R. § 404.1529(c)(4). If a claimant's subjective complaints are consistent with the objective medical evidence, the ALJ will include the claimant's complaints in his or her assessment of the claimant's RFC. Id. "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons, 'with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV. 9435(JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

An ALJ is not required to address all seven factors enumerated in 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3) as long as the ALJ engages in "precise reasoning," the decision is supported by evidence in the record, and the decision "clearly indicates the weight . . . [given] to [the] claimant's statements and the reasons for that weight." Felix v. Astrue, No. 11-CV-3697 (KAM), 2012 WL 3043203, at *8 (E.D.N.Y. July 24, 2012). Where the ALJ fails to state specific reasons for his or her credibility finding, and there is no evidence in the record supporting those reasons, the Court must remand. See Powell v. Astrue, No. 3:09-CV-01082 (FJS/GHL), 2010 WL 4004935, at *5 (N.D.N.Y. Aug.

13, 2010).  However, "if the evidence in the record permits a reviewing authority to 'glean

the rationale of an ALJ's decision,' the ALJ is not required to mention every item of

testimony or to explain why he considered particular evidence unpersuasive or insufficient

to lead him to a conclusion of disability."  Felix, 2012 WL 3043203, at *9 (quoting Mongeur

v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).

      Here, the ALJ determined that "the claimant's medically determinable impairments

could reasonably be expected to cause the alleged symptoms[.]"  T. 27.  However, the ALJ

also found that "the claimant's statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent with the

above [RFC] assessment."  Id.  Plaintiff argues that the ALJ's credibility determination is not

"sufficiently specific" to indicate the degree of credibility given to her statements.  Dkt. No.

11 at 4.

      The ALJ engaged in a detailed analysis of all of the evidence in the record and

identified inconsistencies between plaintiff's statements and the objective medical evidence.

First, plaintiff testified that she believed that she could not work full-time because her sleep

schedule would be negatively affected, which would lead to manic episodes.  T. 48.

However, objective findings from her treating medical providers indicate otherwise, and

were addressed in the ALJ's decision.  Id. at 27-31.  For example, more than one year prior

to plaintiff's alleged onset date, on February 17, 2009, she presented at St. Joseph's

Hospital reporting symptoms of depression.  Id. at 294.  However, she had stopped taking

her prescribed medication and had engaged in mixed drug use.[5]  Id.  A mental status

---

[5] An ALJ is "permitted to consider [the plaintiff's] noncompliance with treatment as
a factor weighing against [the plaintiff's] credibility[,]" as long as the ALJ also considers

examination was unremarkable and no psychosis was present.  Id. at 297.  Later

examinations by Dr. Hines indicated that her depressive and manic symptoms were

effectively controlled with Celexa and Abilify.  Id. at 283.

The ALJ also discussed multiple treatment notes from DeFurio where plaintiff

reported adverse symptoms, but DeFurio indicated mostly normal objective findings.  T. 27-

28.  From November 2010 through January 2011, DeFurio's notes indicated all normal

objective findings, except for limited insight and judgment at times.  See id. at 281, 284-85,

288-89.  On January 15, 2011, psychiatrist Dr. Hines indicated that plaintiff was doing

"much better" on her Celexa and Abilify regimen.  Id. at 283.  Objective findings continued to

be mostly normal at the beginning of 2011, but plaintiff had a tearful affect, appeared

distraught, and reported excessive sleeping and hearing voices on March 29, 2011.  Id. at

276-77, 279-80.  DeFurio noted on this date that plaintiff's insight and judgment were

"surprisingly appropriate."  Id. at 277.  By April 7, 2011, plaintiff reported that she was

"feeling much better" and objective findings were normal aside from limited insight and

judgment.  Id. at 275.  DeFurio's objective findings continued to be mostly normal through

2011.  Plaintiff exhibited improved insight and judgment on July 11, 2011.  Id. at 361.  In

August 2011, Dr. Hines continued her regimen of Celexa and Abilify.  Id. at 358.  Plaintiff

continued to present herself in overall good shape, other than displaying a flat affect on

September 26, 2011, due to complications from poison ivy, and complaining of

concentration and focus difficulties on October 24, 2011.  Id. at 352, 355.  In the beginning

---

any information in the record that may explain the plaintiff's failure to seek treatment.
Weed Covey v. Colvin, No. 13-CV-6602 EAW, 2015 WL 1541864, at *17 (W.D.N.Y. Apr.
6, 2015).

of 2012, plaintiff continued to display limited judgment, but was otherwise was intact. <u>See</u> <u>id.</u> at 346, 349. Plaintiff presented herself as despondent and tearful on April 2, 2012. <u>Id.</u> at 345. Despite these symptoms, DeFurio noted improvement on April 20, 2012, although plaintiff's insight and judgment were still limited. <u>Id.</u> at 344. Objective findings continued to be normal but for limited insight and judgment in May and June of 2012. <u>Id.</u> at 339-40, 343. DeFurio's most recent treatment notes on record indicate that plaintiff's bipolar disorder is "mild." <u>Id.</u> at 339-40.

In sum, DeFurio's and Dr. Hines' treatment records indicate that plaintiff was usually in a euthymic mood, with congruent affect, and exhibited limited insight and judgment only periodically, contradicting plaintiff's testimony that her bipolar disorder "severely" affects her concentration and focus. <u>See</u> T. 51. Further, DeFurio found in her MSS that, in some areas, plaintiff would be "seriously limited, but not precluded" from completing work, which also calls into question plaintiff's contention that she could not keep a full-time job due to her bipolar disorder and depression. <u>Id.</u> at 51, 335-36.

The ALJ also considered records from Dr. Liepke in reaching a credibility determination. Dr. Liepke, who had a ten-year treating relationship with plaintiff, found that, as of November 4, 2010, plaintiff suffered from poor concentration and a depressed mood, but she had fair insight and judgment. T. 261-62. The ALJ noted that plaintiff had reported having trouble interacting with supervisors and peers because of her irritability. <u>Id.</u> at 29, 51. However, Dr. Liepke opined that plaintiff had no limitations in the areas of social interaction, physical functioning, or understanding and memory. <u>Id.</u> at 29, 263-64. The ALJ also considered Dr. Liepke's opinion that plaintiff had some limitation in the area of concentration and persistence, depending on her bipolar cycle. <u>Id.</u> at 29, 264. Further, the

ALJ considered Dr. Liepke's opinion that plaintiff has trouble setting realistic goals and responding to work changes. Id. at 29, 265. The ALJ accounted for the limitations opined by Dr. Liepke where the RFC states that plaintiff is limited to "simple routine tasks involving only simple work related decisions with few, if any, workplace changes. . . ." Id. at 25.

The ALJ further compared plaintiff's claims with the findings of Dr. Noia, who conducted a mental status examination of the plaintiff on May 3, 2011. T. 269-73. Plaintiff reported multiple symptoms of depression, including sleep variability, decreased appetite, increased irritability, and occasional thoughts of suicide with no suicidal intent, all symptoms that plaintiff had complained of to DeFurio, Dr. Hines, Dr. Liepke, and at the October 23, 2012 hearing. Id. at 269-70. Plaintiff also reported that her current treatment effectively controls her manic symptoms. Id. at 270. However, plaintiff failed to report her drug and alcohol history to Dr. Noia, which the ALJ considered to adversely affect plaintiff's credibility. Id. at 29. After considering her history and reported symptoms, Dr. Noia determined that plaintiff is capable of maintaining concentration and attention for tasks, attending to a routine and schedule, making appropriate decisions, and interacting moderately well with others. Id. at 272. Dr. Noia also noted that plaintiff has difficulty dealing with stress. Id.

The ALJ further considered Dr. Harding's findings. Dr. Harding's assessment, although not based on a personal examination of plaintiff, largely supported the opinions of the examining doctors in determining that plaintiff could "perform[] unskilled and complex tasks independently in a low contact setting." Id. at 322.

The ALJ considered all of plaintiff's subjective complaints and engaged in a detailed explanation of how plaintiff's own testimony and statements were more severe than her treating sources' objective findings. T. 27-31. The ALJ also considered how plaintiff was

-22-

faring on her current medication regimen, including Dr. Hines' opinion that she was doing well on Celexa and Abilify, and plaintiff's statement to Dr. Noia that her current medication regimen effectively controls her manic episodes. Id. at 27, 29; see 20 C.F.R. § 404.1529(c)(3)(iv). Further, the ALJ considered the plaintiff's activities of daily living, noting that she completes housework, cooks dinner, drives a car, socializes, and enjoys working part-time as a teacher's aide. T. 26, 28; see 20 C.F.R. § 404.1529(c)(3)(i). In sum, the ALJ considered most of the factors enumerated in the regulations in assessing plaintiff's credibility. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ is not required to opine upon all seven enumerated factors, but must set forth his reasoning with sufficient specificity for a reviewing court to understand the rationale of his decision. Felix, 2012 WL 3043203, at *8-9. Here, the ALJ has stated sufficient reasons in his decision to support the conclusion that his credibility assessment is supported by substantial evidence. See Lewis, 62 F. Supp. 2d at 651.

Accordingly, it is recommended that plaintiff's request to remand on this issue be denied.


### ii. Treating Physician's Rule

Plaintiff contends that the ALJ committed reversible error when he failed to give controlling weight to the opinions of Dr. Hines and DeFurio. Dkt. No. 11 at 5-9. When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a

treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "'This rule applies equally to retrospective opinions given by treating physicians.'" Schrock v. Colvin, No. 3:12-cv-1898 (MAD/CFH), 2014 WL 2779024, at *6 (N.D.N.Y. June 19, 2014) (quoting Campbell v. Astrue, 596 F. Supp. 2d 446, 452 (D. Conn. 2009)) (citation omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to afford the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other substantial evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive; and "the less consistent the opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e).

Here, the ALJ explained that he gave only moderate weight to the opinions of DeFurio and Dr. Hines because the limitations enumerated in their October 14, 2012 MSS "[were] found to be a bit more restrictive than what is necessary according to [plaintiff's] actual treatment records." T. 31.

Where a treating physician's MSS conflicts with that physician's treatment records

regarding a plaintiff, an ALJ is not required to give the opinion controlling weight.  <u>Cichocki v. Astrue</u>, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order).  Where an ALJ comprehensively explains his reasoning for declining to afford controlling weight to a treating source's opinion, he has complied with the treating physician rule.  <u>Id.</u>  More weight will be given to an opinion that is consistent with the record as a whole.  <u>Klodzinski v. Astrue</u>, 274 F. App'x 72, 73 (2d Cir. 2008).

Despite relatively moderate objective findings in treatment notes, the MSS set forth strict limitations on plaintiff's work abilities.  DeFurio opined that plaintiff would be "seriously limited" in some abilities and aptitudes necessary to perform unskilled work.  T. 335-36.  However these conclusions are not supported by the record as whole.  First, DeFurio opined in the MSS that plaintiff would be seriously limited, but not precluded from completing an entire workday or workweek without interruptions from psychologically based symptoms and dealing with stress.  <u>Id.</u> at 335.  However, plaintiff was generally euthymic, not depressed or manic, at her office visits with DeFurio.  <u>See</u>, <u>e.g.</u>, 280-81, 288-89.  In over the nearly two years of treatment with DeFurio, only once did plaintiff present herself as manic.  <u>See</u> <u>id.</u> at 339.  Mental status evaluations were mostly normal, other than occasional findings of limited insight and judgment.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 275, 289, 297, 349.  DeFurio further opined in her MSS that plaintiff would be seriously limited, but not precluded from maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness.  But, none of DeFurio's treatment notes indicate that plaintiff ever had hygiene issues.  As stated, plaintiff was generally euthymic, and exhibited congruent or good affect in her office visits with DeFurio.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 281, 288-89, 355.  Further, plaintiff attended an out-of-town cookout in June 2011, and attended a party and engaged

in other social activities in May 2012.  Id. at 341, 359.  Although plaintiff indicated some

issues while experiencing depressive or manic symptoms at her previous jobs, id. at 51,

plaintiff did not indicate any trouble at her current job, and stated that she enjoyed working

as a teacher's aide.  Id. at 341.  Dr. Hines found that plaintiff's bipolar disorder and

depression were well-managed when plaintiff complied with her medication regimen, and

the record shows no indications of non-compliance.  See id. at 283.

DeFurio also opined in the MSS that plaintiff would be "off task" 10% of the day

during an eight-hour workday when stable and 20% when manic, and that plaintiff would be

absent from work approximately three days per month due to her impairment.  T. 336.

These limitations are also inconsistent with DeFurio's and Dr. Hines' own treatment notes.

As stated, plaintiff generally appeared euthymic, and with congruent affect at her office

visits with DeFurio.  See, e.g., 280-81, 288-89, 355.  DeFurio's treatment notes indicate

some subjective complaints from plaintiff regarding her ability to concentrate.  See id. at

284, 352.  However, Dr. Liepke's notes indicate that plaintiff's ability to engage in sustained

concentration and persistence at work is dependent on the cycle of her bipolar disorder,

and, as stated by Dr. Hines, her manic and depressive symptoms are effectively controlled

with medication.  Id. at 264, 283.  Thus, as long as she maintains her medications, the

records suggest that her concentration and persistence would be controlled.

Further, the psychiatric examination performed by Dr. Noia and the psychiatric review

technique and mental RFC assessment performed by Dr. Harding indicated fewer

limitations than the MSS completed by DeFurio.  Further, both Dr. Noia's and Dr. Harding's

assessments are supported by the treatment record as a whole.[6]  Dr. Noia found that

plaintiff's thought processes were coherent and her attention and concentration were intact.

T. 271.  This conclusion is supported by DeFurio's treatment notes, which indicated that

plaintiff sometimes had limited insight and judgment, but exhibited normal objective findings

otherwise.  See, e.g., id. at 284.  Dr. Harding found that plaintiff was only moderately limited

in most areas in his assessment of her mental functional capacity.  Id. at 320-21.  This

conclusion is supported by DeFurio's mostly normal objective findings, and Dr. Liepke's

opinion that plaintiff would only be limited in some areas when she is experiencing a

depressive or manic episode.  See id. at 264-65, 275, 279-80, 284-85.

In sum, DeFurio's and Dr. Hines' MSS is somewhat inconsistent with the evidence as

a whole, as it set forth more restrictive findings than the objective evidence could support,

and as such, the ALJ was free to afford only moderate weight to that opinion.  See

Klodzinski, 274 F. App'x at 73-74.  Furthermore, despite their limited objective findings, the

RFC is still reflective of some limitations opined in DeFurio's MSS.  DeFurio stated that

plaintiff would be "seriously limited, but not precluded" in some areas from completing a

---

[6]  Plaintiff argues that the ALJ erred by affording significant weight to Dr. Noia's opinion and "solid" weight to Dr. Harding's opinion.  T. 30.  Although the plaintiff is correct that "in general, an opinion based upon a single examination deserves limited weight[,]" Steele ex rel. M.D. v. Astrue, No. 09-CV-347 (NAM/VEB), 2011 WL 3841534, at *7 (N.D.N.Y. Aug. 10, 2011) (citation omitted), "[t]he assessments of consultative examiners may constitute substantial evidence when supported by the weight of the evidence."  Id. The opinions of non-examining physicians, like Dr. Harding, may override the opinions of treating physicians if they are supported by sufficient evidence in the record.  Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010).  Accordingly, it was within the ALJ's discretion to determine whether Dr. Noia's and Dr. Harding's opinions were supported by the weight of the evidence, and entitled to significant weight.  See Strange v. Comm'r of Soc. Sec., No. 6:13-cv-527 (GLS/ESH), 2014 WL 4637093, at *12-13 (N.D.N.Y. Sept. 16, 2014) (finding that consultative examiners' opinions were properly afforded significant weight because they were consistent with the record as a whole).

normal workday.  T. 335-56  These areas include: completing a normal workday and workweek without interruption from psychologically based symptoms; dealing with work stress; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness.  Id.  DeFurio also opined that plaintiff would be off task 10% of the workday when stable and 20% when manic, and that she would miss approximately three days per week due to her impairment.  Id. at 336.  The ALJ noted that some limitations were considered and accounted for within the RFC assessment.  Id. at 30. Specifically, the ALJ's RFC assessment states that plaintiff can only perform "simple routine repetitive tasks involving only simple work related decisions[.]"  Id. at 25.  This limitation takes into account DeFurio's opinion plaintiff would have trouble managing work stress.  Id. at 335.  The ALJ's assessment also states that plaintiff can only work somewhere "with few, if any, workplace changes and only occasional interaction with supervisors, coworkers and the public."  Id. at 25.  These limitations also reflect DeFurio's opinions that plaintiff has trouble managing stress, and maintaining socially appropriate behavior.  Id. at 335-36.

Accordingly, there is substantial evidence in the record to support the ALJ's decision to afford moderate weight to the opinions of DeFurio and Dr. Hines and it is recommended that plaintiff's request to remand on this issue be denied.


### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that plaintiff's motion for a finding of disability (Dkt. No. 11) be **DENIED** and the Commissioner's decision finding no disability be **AFFIRMED**.

It is **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this Court's local rules.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

Dated: September 4, 2015
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge